4L 75
11L 89
15L 192
4pi 168

## Augusta Manufacturing Company *v.* W. M. Vertrees.

1. CORPORATION. *Franchises. User.* Very slight circumstances are sufficient to show user of franchises under a charter of incorporation, and a consequent organization of the corporation.

2. PRACTICE AND PLEADINGS. *Ejectment.* In an action of ejectment it would be a good defense, under the plea of not guilty, that the plaintiff, who sued as a foreign corporation, was not in fact a corporation.

3. PRACTICE. *Charge of court. Evidence of incorporation.* Upon the question of the incorporation of a company, it is error to charge that the mere execution of a deed to the company by one party, and of a new deed in confirmation by the devisee of that party, would not be sufficient proof of user of franchises to establish the incorporation. The jury should have been left to draw their own inference.

4. SAME. *Same. Declaration. New Count.* It is error to charge that under the present mode of proceeding in ejectment, a person in whose name a new count is filed becomes a substantive and distinct party, whose recovery would be antagonistic to the rights of the original plaintiff. .

5. SAME. *Same. Same. Amendment. Statute of Limitation.* If there be privity between the plaintiff and a new party in ejectment, as where the relation exists of vendor and vendee, an amendment of the declaration by the addition of a count in the name of such party, would relate back to the commencement of the suit so as to obviate the bar of the statute of limitations.

### FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County. N. BAXTER, J.

M. ALLEN and N. S. BROWN, for plaintiff.

S. WATSON, for defendant.

COOPER, J., delivered the opinion of the Court.

Action of ejectment, in which the verdict and judgment were for the defendant, and the plaintiff appealed in error.

The plaintiff sues as a corporation chartered by the Legislature of the State of Georgia. It introduced in evidence the charter or act of incorporation passed on the 27th of December, 1845, which appoints certain persons named a board of commissioners to open a book of subscription for shares in a manufacturing company, the commissioners to require from the subscribers a payment of not less than five nor more than ten per cent. of the amount subscribed. By the third section of the act, "the subscribers or stockholders in said company shall be, and they are hereby declared to be a body corporate and politic under the name and style of the Augusta Manufacturing Company." The plaintiff further introduced as evidence a deed executed to it by R. H. Brockway, acknowledged by him on the 16th of July, 1858, and registered the next day, purporting to convey a lot in the town of Edgefield, which it claims covers the land sued for. It also introduced evidence tending to prove that this conveyance was made in consideration of a debt due to it by Brockway for goods manufactured by it as a corporation, and other testimony tending to show that at the date of the deed it had an agent in Nashville for the transaction of

its business as a foreign manufacturing company. Upon this state of facts, the Court charged the jury as follows: "To enable the plaintiff to hold property, or maintain an action, it is necessary that the proof should show that the stockholders, by an acceptance of the charter, became a corporation. The fact of acceptance is susceptible of being proved by direct proof, such as a resolution by the stockholders expressly accepting, or by proof that they have been in the habit of using and exercising the privileges and franchises granted by the charter, or that they have been recognized as a corporation by the Legislature of Georgia or of this State. But if there is no other proof of the plaintiff's corporate existence except its charter, that has been read, and the deeds which have been read in evidence of title in this case, and the fact of bringing this suit in the name of the Augusta Manufacturing Company, these facts alone are not sufficient to prove the plaintiff's corporate existence, or right to sue or hold property."

The errors assigned on this charge are that there was no plea calling in question the plaintiff's corporate existence, that the charter incorporated the company directly, that the facts stated by the Court as not sufficient to establish the corporate existence should have been left to the jury to pronounce on their sufficiency, and that the evidence clearly showed a user.

The Code, sec. 3239, provides that the defendant may plead not guilty to an action of ejectment,

"and. upon such plea may avail himself of all legal defenses." It would be a good defense to such an action brought by a plaintiff as a foreign corporation, that the plaintiff was not a corporation. While the rule in other actions may be different, the statute allows the defense in this action under the general issue.

The act of the Legislature of Georgia, offered in evidence, does not directly incorporate the persons named as a body politic and corporate. It appoints commissioners to open a book for the subscription of stock, and incorporates the subscribers, It was therefore necessary to show acceptance of the charter by user or otherwise. Very slight circumstances of user are required in such cases: *Gleaves* v. *Brick Church Turnpike*, 1 Sneed, 491. It was error to charge that the mere execution of a deed to the company by one party, and of a new deed in confirmation by the devisee of that party, and the bringing of an action of ejectment thereon, would not be sufficient proof of user of manufacturing franchises to establish the incorporation. These facts should have been left to the jury to draw their own inference. And there was other proof tending to show an organization of the corporation.

An important question of controversy in the court below was whether the deed from Brockway, under which the plaintiff claimed, covered the land in dispute. Brockway originally owned a parcel of land in the town of Edgefield, in the form of a

parallelogram, 568 feet in length from east to west, and 170 feet wide from north to south. It was laid off into lots fronting north on the Gallatin turnpike, afterwards known as Main street, running back to an alley. The land was bounded on the east by Minnick street, and on the west by Tulip street. Each of the lots beginning at Minnick street fronted fifty feet on Main street, except the most westerly lot on the corner of Tulip and Main streets, which had a front of sixty-eight feet, and all had a depth of 170 feet. The proof leaves no doubt that Brockway sold to the plaintiff the lot on the corner of Main and Tulip streets, but the boundaries in his deed of conveyance tend to locate it at the other corner. The deed conveys "a tract of land in the town of Edgefield, Davidson county, Tennessee, as follows: Beginning at a stake the southwestern junction of Minnick street and the Gallatin turnpike road, thence running along said turnpike sixty-eight feet to a stake; thence at right angles with said turnpike road, and parallel with Minnick street, 170 feet to an alley; thence parallel with said alley, running towards Minnick street, sixty-eight feet; thence along said Minnick street, towards said turnpike road, 170 feet to the beginning." At the date of this conveyance, Brockway had sold and conveyed to a third person the lot on the southwestern corner of Minnick and Main streets. He still owned the lot on the corner of Tulip and Main streets, the size of which exactly corresponds with the size of the lot de-

scribed in his deed to the plaintiff, and there is proof tending to show that he put the agent of the plaintiff in possession of this lot under the deed. Brockway died in 1862, having by will devised all of his real estate to Elizabeth A. Brockway, his wife. On the 25th of March, 1872, she, by deed of that date, reciting the sale and conveyance by her husband to the plaintiff, and the mistakes which had been made in the locative calls therein, undertook, in consideration of the original payment to the husband, to relinquish, quit claim and convey to the plaintiff, by its true boundaries, the lot intended to have been conveyed.

The real defendant in this case claims the lot in controversy, being a part of the lot 68 by 170 feet on the corner of Tulip and Main streets, under a deed made on the 21st of July, 1860, by third persons having, so far as appears, no title. The defendant went into possession about the date of this deed, and has been in possession ever since.

This suit was commenced on the 15th of May, 1872, the declaration averring title in the plaintiff. On the 15th of April, 1874, the plaintiff, by leave of the Court, added a count to the declaration in the name of Elizabeth A. Brockway, to which the defendant pleaded not guilty.

The defense made to the title under the original conveyance from Brockway was, that the calls of the deed did not cover the land in dispute. The defense to the confirmatory deed of Brockway's devisee was, that it was void for champerty by reason

of the defendant's adverse possession at the time. And the defense to the new count in the name of the devisee rested on the ground that it was a new action, and barred by the statute of limitations.

Upon the first point the Court charged: "It is conceded that the lot described in the original deed is separated from the lot of which defendant is in possession by several intervening lots, and constitutes no part or parcel thereof. This being so, the plaintiff cannot recover upon this deed."

On the second point he said: "If you should find from the testimony that the defendant, either by himself or agents, was in the adverse possession of said lot at the date of the deed of the devisee, the deed is champertous and void, and no recovery can be had upon it."

On the third point he said: "I am of opinion that since the abolition of the old action of ejectment, and the adoption of the present mode of proceeding to recover the possession of land, Mrs. Brockway is to be considered a substantive and distinct party to this record, and if you find for the plaintiff upon her title, the verdict must be for her, and against the Augusta Manufacturing Company. She is a new party to the action, sueing in her own right and for her own benefit, and any defense may be made to her title that could have been made if she had commenced a separate action in her own name on the day she became a party to the declaration. And if the defendant had had

the peaceable possession of the lot for seven years on that day, the 18th of April, 1874, such possession would be a bar to the action, and your verdict will be for the defendant."

The charge says it was conceded that the lot described in Brockway's deed was separated from the lot sued for by several intervening lots. In view of this concession, error can scarcely be assigned on that part of the charge. Boundary in ejectment is a question for a jury upon a proper charge. Whether, notwithstanding the language of the deed, the jury could, upon a proper charge, have found the lot in controversy to be within its boundaries, by the rejection of words of erroneous description, in view of the actual delivery of the lot to the plaintiff under the deed, would be a useless inquiry; *Hale* v. *Darter,* 10 Hum., 92, 94: *Person* v. *Roundtree,* 1 Hayw., 378; *Winchester* v. *Gleaves,* 1 Tenn., 213; *White* v. *Hembree,* 1 Tenn., 529; *Henderson* v. *Long,* Cooke, 128; *Funa* v. *Manning,* 11 Hum., 311; *Fancher* v. *DeMontegre,* 1 Head, 40; *Cherry* v. *Slade,* 1 Murphy, 82; *Barclay* v. *Howell,* 6 Pet., 498.

Treating the deed of Elizabeth A. Brockway as a new and independent conveyance, the Judge's charge on the second point would be good law. But if it be treated as a conveyance in fulfillment of a previous *bona fide* contract, evidenced by the previous deed, rendered ineffective by reason of its misdescription, and entered into before the adverse possession commenced, it would not be within the

operation of the statute of champerty: *Whitesides* v. *Martin*, 7 Yer., 384; *Sims* v. *Cross*, 10 Yer., 460; *Hale* v. *Darter*, 10 Hum., 92: *McCoy* v. *Williford*, 2 Swan, 644. So, if it be considered as a deed of confirmation, as it may be, notwithstanding the words of positive grant (Co. Lit. 301, *b.*) although the plaintiff took no estate in the land under the original deed, it would not be void for champerty: *Crockett* v. *Campbell*, 2 Hum., 411; *Simmons* v. *McKissick*, 6 Hum., 259. These points must, in the attitude in which the case is now before us, be left undecided.

But His Honor clearly erred in his charge on the third point. Under the old action of ejectment which prevailed in this State prior to the Act of 1852, brought into the Code, sec. 3230 *et. seq.*, there can be no doubt that the lessor of the plaintiff could add a new count to the declaration in the name of a third party. His Honor is of opinion that this rule has been abolished by the new mode of proceeding. In this he is clearly in error. The Code, sec. 3236, expressly recognizes the continuance of the old rule, and authorizes the filing of separate counts in the name of several parties. The old practice still prevails under the new form. Formerly, the plaintiff, whose deed was void for champerty, might add a count in the name of his grantor, in order to have the benefit of the title he had bought: *Wilson* v. *Nance*, 11 Hum. 190. The same practice was sanctioned by this Court, under the Code, during the last term at Knoxville.

If there were no privity between the plaintiff and the new party, the additional count would be treated, for all purposes of defense, as the commencement of a new suit as of the date of its filing: *Corder* v. *Dolin* 4 Bax., 240. If there were privity, as in the case of grantor and grantee, where the deed was void for champerty, it was held under the old practice that the amendment would relate back to the commencement of the suit, and place the rights of the parties on the same ground as if it had been originally incorporated in the writ and declaration: *Nance* v. *Thompson*, 1 Sneed, 321. The reason was, as stated in that case, that no new right or title is set up. "It is rather," says the Judge, "a different statement of the same cause of action or right of recovery, adapted to a different state of proof. The plaintiff merely seeks, in aid of his right to use the name of his vendor as he has the right to do, and to draw to the equitable title in himself the mere dry legal title remaining in the vendor with which it was attempted ineffectually to vest him." This is equally true of the equitable title of the vendee whose deed by mistake does not convey the land intended. The only difference between the old practice and the new is, that under the Code the vendee cannot use the vendor's name as of right, but must obtain his consent.

For the errors stated, the judgment must be reversed and the cause remanded for a new trial.